IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>   vs.<br><br>MAXIMINO VELAZQUEZ-SANCHEZ,<br><br>            Defendant.<br>_____ | NO.   CR 05-01131-TUC-FRZ (BPV)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS** |

On June 8, 2005, the Defendant Maximino Velazquez-Sanchez and others were indicted for conspiracy to transport and harbor illegal aliens for financial gain, conspiracy to launder money, harboring for private financial gain, and attempting to transport (Docket # 54). On April 5, 2006, Velazquez-Sanchez filed a Motion to Dismiss asserting the Government had deported potentially exculpatory witnesses (Docket # 99). The co-Defendants joined in the Motion (Docket # 139 and # 149). On May 17, 2006, the Government filed its Response opposing the Motion (Docket # 103). The matter came on for hearing on October 18, 2006. The Defendant called private investigator Angel Enriquez, Jr. The Government called Homeland Security Agent Richard Hill.

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after his independent de novo review and consideration, enter an order **DENYING** Defendants' Motions to Dismiss.

## **FACTS**

In approximately April, 2004, the U.S. Border Patrol began arresting illegal aliens

1 being harbored within various houses within the district. Although the Government was able
2 to establish that the occupants were illegally in the country and being harbored pending
3 transport further into the U.S., the Government was unable to identify any persons as target
4 Defendants. As a result, these aliens, once identified and biographical data obtained, were
5 returned to Mexico. Approximately 40 people, including Maximino Velazquez-Sanchez,
6 were released to Mexico.

7       Eventually the Government was able to identify the principal conspirators and this
8 prosecution ensued. The Government disclosed to Defendants the names of those arrestees
9 who were captured and released to Mexico. Velazquez-Sanchez' defense Counsel employed
10 Angel Enriquez, Jr., to locate within the U.S. any of the pre-Indictment arrestees released by
11 the Government. Investigator Enriquez accessed various data bases in an effort to locate
12 within the U.S. any of the listed witnesses. The investigator had, in fact, no real success in
13 locating these potential witnesses. At best, Enriquez knew that one of the releasees, his
14 client, was in custody, and that a possible co-Defendant, Sylvia Estella Moreno, contacted
15 him and denied any knowledge about the conspiracy.

16       Investigator Enriquez was not provided with any of the alleged witnesses' I-213's.
17 These documents contain each alien's self-reported home addresses. Enriquez was not
18 instructed to attempt to locate these people in Mexico and did not attempt to do so.

19       No testimony was presented by the Defendants as to what testimony these released
20 aliens would present on behalf of Defendants. The Defendants did not introduce any I-213's
21 or recorded statements of the released aliens. The Court, therefore, cannot and will not
22 speculate as to what the released aliens said or might have said.

23 **DISCUSSION**

24       The Sixth Amendment affords a criminal Defendant "the right ... to be confronted with
25 witnesses against him; to have compulsory process for obtaining witnesses in his favor".
26 (U.S. Constitution, 6th Amendment). Where the Government has placed an alleged witness
27 beyond the Court's compulsory process, the Defendant must establish:

28       1.    The Government acted in bad faith; and

2. The conduct resulted in prejudice to the Defendant's case. United States v. Valenzuela-Bernal, 485 U.S. 858, 873 (1982).

In this particular case, the arrested aliens were released to Mexico because the Government was unable to identify a criminal suspect. This release cannot be said to be bad faith. Rather, the release makes common sense. No material witness application would be granted by a Court where the Government would have to assert that the prospective detainee is illegally in the U.S., but that no identifiable Defendant exists. Taking this procedure one step further, the Court could not Order a material witness deposition of the aliens without appointing a lawyer or lawyers to represent unknown Defendants. This Court is unable to conceive of how effective this deposition would be at some future date. The indeterminate detention of potential witnesses is not contemplated by our criminal justice system.

## **CONCLUSION**

It is the recommendation of this Court that the District Judge, after his independent de novo review and consideration, enter an Order **DENYING** Defendants' Motions to Dismiss (Docket # 99, # 139, and # 149).

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CR 05-01131-TUC-FRZ.

DATED this 2nd day of November, 2006.

_____
Bernardo P. Velasco
United States Magistrate Judge